**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **DEMETRICE MARTIN, individually and on behalf of E. MARTIN, a minor,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:15-CV-6 (MTT)** |
| ) | |
| **MACON-BIBB COUNTY, _et al._,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## <u>ORDER</u>

Defendants Overlook Gardens Properties, LLC and Woodruff Property Management Company and Defendant Macon-Bibb County[1] have moved for summary judgment on the claims asserted against them by Plaintiff Demetrice Martin on her and her minor son E. Martin's behalf.  (Docs. 30; 33).  The motions are **GRANTED**.

## I.    BACKGROUND

Defendant Justin Fox was an officer with the Macon Police Department and lived with his girlfriend at Defendant Overlook Gardens Properties, LLC, otherwise known as Overlook Gardens Apartments ("Overlook").  (Docs. 30-3 ¶¶ 2-4; 36-2 ¶¶ 2-4). Defendant Woodruff Property Management Company ("Woodruff") is the property management company for Overlook.  (Docs. 30-3 ¶ 2; 36-2 ¶ 2).  Fox worked for Woodruff as an "Independent Contractor Courtesy Officer."  (Docs. 30-1 at 7-8; 30-3 ¶ 5; 36-2 ¶ 5).  His contract with Woodruff required him to patrol the apartment complex,

---

[1] Although the Plaintiffs have named the City of Macon as a Defendant, the City of Macon and Bibb County have consolidated, and as the former City of Macon notes in its answer, its correct name is Macon-Bibb County.  (Doc. 13 ¶ 2).  The Plaintiffs appear to acknowledge that this is the correct name in their response brief.  (Doc. 36 at 2).

to keep a log documenting any events such as breaches of the law, and to "immediately contact the proper local authorities when confronted with any situation involving a breach of the local law."  (Doc. 30-1 at 7).

On January 26, 2013, Fox's girlfriend texted him that a boy had thrown something at Fox's dog.  (Docs. 30-3 ¶ 10; 36-2 ¶ 10; 31-4 at 46:22-47:2).  Fox testified that when he received this message, he was involved in police-related duties, but it is undisputed that the Macon Police Department did not dispatch him to Overlook to respond to the incident.  (Docs. 33-3 ¶ 15; 36-1 ¶ 15; 31-4 at 35:11-13, 36:14-37:3). Fox, wearing his full police uniform, drove to Overlook and began looking for the boy his girlfriend described.  (Docs. 30-3 ¶¶ 12-14, 17; 36-2 ¶¶ 12-14, 17; 33-3 ¶ 21).  Fox found another little boy who identified Fox's suspect as his eight-year-old brother, E. Martin.  (Docs. 31-2 at 18:10-11; 33-3 ¶ 9; 36-1 ¶ 9).  Fox asked the brother to take him to the Plaintiffs' apartment where he and E. Martin lived with their mother Demetrice Martin.  (Docs. 30-3 ¶ 14; 36-2 ¶ 14).

Demetrice Martin testified that Fox pounded on their door, and when she answered, he repeatedly told E. Martin to "[t]urn around and put your hands behind your back," would not explain what was going on, and "used E.M. to force his way on inside the house."  (Doc. 31-1 at 22:15-23:5).  Fox testified that he received permission to enter the house and that he introduced himself as a police officer and a courtesy officer. (Doc. 31-4 at 36:14-37:3, 42:25-43:4).  Fox placed E. Martin in handcuffs, who eventually admitted he threw pine straw at Fox's dog.  (Docs. 30-1 at 23:18-24; 30-3 ¶¶ 15-16; 36-2 ¶¶ 15-16).  According to Demetrice Martin, Fox told them he could "have you guys thrown out of here" and could arrest E. Martin for animal cruelty.  (Docs. 30-1

- 2 -

at 24:3-11; 30-3 ¶¶ 15-16; 36-2 ¶¶ 15-16).  Demetrice Martin testified that after E. Martin apologized, Fox took the handcuffs off and said he was trying to teach E. Martin a lesson and that he could get in trouble for throwing things at dogs.  (Docs. 30-1 at 24:13-14; 30-3 ¶ 18; 36-2 ¶ 18).

It is undisputed that Fox did not log or report this incident to anyone at Overlook or Woodruff.  (Docs. 30-3 ¶¶ 20-21; 36-2 ¶¶ 20-21).  It is also undisputed that no employee at Overlook asked Fox to handle the incident with E. Martin and that "[n]either Overlook nor Woodruff ever instructed Fox to arrest someone in order to curb illegal activity on the property or for any other reason."  (Docs. 30-3 ¶¶ 7, 23; 36-2 ¶¶ 7, 23).

When the Macon Police Department became aware of the incident, they removed Fox from patrol duty, and Internal Affairs investigated.  (Docs. 30-3 ¶ 18; 33-3 ¶ 19; 36-1 ¶¶ 18-19).  Henderson Carswell, who was deputy chief at the Macon Police Department at the time, testified that Fox violated several internal policies.  (Doc. 34-4 at 7:6-16, 72:5-78:24, 82:15-84:9).  Specifically, MPD General Order 660-1.42(C) provides that an officer is not to intervene in situations involving family or friends, absent an emergency, unless a supervisor orders him to do so.  (Doc. 34-4 at 248).  MPD General Order 930(I)(A) provides that "[u]se of handcuffs merely to frighten or impress the juvenile, or encourage the juvenile to cooperate is strictly prohibited" and that "[u]se of handcuffs should be restricted to those instances involving juveniles who have the capability of resisting arrest, of attempting to make an escape, or who may pose a threat to the safety of themselves or others."  (*Id.* at 261).  MPD General Order 950 requires that "[w]hen dealing with the juvenile offenders, the officer will use the least

coercive alternative consistent with preserving public safety, order and individual liberty." (*Id.* at 268).

Carswell further testified that Fox had received an eight to ten week training program in the Macon Policy Academy, which included mandatory classes on warrantless entries into private homes. (*Id.* at 92:7-24, 97:22-98:2). Michael Bittick, who was an instructor and supervisor for the Police Academy in January 2013, testified by affidavit that Fox's "course of instruction consisted of review of, detailed discussion of, and instructor lectures on, the written policies, procedures, and protocols of the Macon Police Department." (Doc. 33-1 ¶¶ 5, 7, 10). Bittick also stated Fox received a copy of these policies and protocols. (*Id.* ¶ 10).

The Plaintiffs, in their claims against Macon-Bibb County, rely heavily on what they say is testimony by Fox that he was trained to place people in handcuffs and then investigate. (*Id.* at 53:24-54:2).

After Internal Affairs conducted its investigation, the Disciplinary Review Board unanimously recommended Fox's termination. (Docs. 33-3 ¶ 19; 36-1 ¶ 19). Fox resigned after receiving notice of his pending termination. (Docs. 33-3 ¶ 20; 36-1 ¶ 20).

## II.   DISCUSSION

### A. Motion for Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.

2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B. Overlook and Woodruff's Motion

The Plaintiffs have asserted state-law claims for false arrest, false imprisonment, assault and battery, and intentional infliction of emotional distress against Overlook and Woodruff. Overlook and Woodruff argue they "are not liable … because Fox was not

performing any duties directed by [them] at the time of the incident." (Doc. 30-4 at 9). While the Plaintiffs responded to Overlook and Woodruff's statement of material facts, their brief makes no mention of their claims against Overlook and Woodruff, leaving the Court to guess what possible counter they have to Overlook and Woodruff's motion for summary judgment.

The Plaintiffs' complaint suggests that they thought Fox was an employee of Overlook and Woodruff and because he was "acting within his scope and duty as a courtesy officer," Overlook and Woodruff were vicariously liable for Fox's actions. However, as the Plaintiffs seem to acknowledge in their response to Overlook and Woodruff's statement of material facts, Fox had an independent contractor relationship with Woodruff.  Under Georgia law, those who contract with independent contractors are not liable for the contractors' negligent torts, much less for their intentional torts. *Page v. CFJ Props.*, 259 Ga. App. 812, 813, 578 S.E.2d 522, 523-24 (2003).  The employer of an independent contractor may be liable for the contractor's torts if the employer "controls the time, manner, and method of executing the work."  *Id.* at 523. (quoting *Wilson v. Waffle House*, 235 Ga. App. 539, 539, 510 S.E.2d 105, 106 (1998)). However, in those cases "involving off-duty police officers working for private employers, … the employer escapes liability if the officer was performing police duties which the employer did not direct when the cause of action arose."  *Id.* at 523-24.

Here, there is no evidence that Fox was acting at the direction of Overlook and Woodruff when he, wearing his police uniform, handcuffed and seized E. Martin and investigated the incident.  Nothing in Woodruff's agreement with Fox as an "Independent Contractor Courtesy Officer" instructed him to act as he did.  (Doc. 30-1 at

7-8).  *Cf. Seibers v. Dixie Speedway, Inc.*, 220 Ga. App. 811, 812-13, 470 S.E.2d 452,

454 (1996) (holding there was a genuine issue of fact whether the employer controlled

the off-duty deputies' actions where there was a question whether "the deputies were

implementing [the defendant's] own policy").  Fox himself testified that no one at

Overlook or Woodruff ever directed him to arrest or handcuff a tenant, and the property

manager and supervisor for Overlook and Woodruff testified to the same in their

affidavits.  (Docs. 30-1 at 4; 30-2 at 2; 31-4 at 30:20-24).  Although the Plaintiffs

objected to various statements of material fact, none of their objections or the evidence

cited in those objections create a genuine issue of fact with regard to whether Fox acted

at the direction of Overlook and Woodruff.  Thus, there is no genuine issue of fact

whether Overlook and Woodruff are liable, and therefore, they are entitled to summary

judgment on the claims against them.

### C.  Macon-Bibb County's Motion

The Plaintiffs have asserted claims pursuant to 42 U.S.C. § 1983 for violations of

the Fourth and Fourteenth Amendments and state-law claims for negligent training,

supervision, and retention against Macon-Bibb County.  Macon-Bibb County argues that

(1) the Plaintiffs have failed to show any alleged constitutional violations occurred

pursuant to an official policy or custom or because of inadequate training and thus have

not established *Monell* liability; (2) any federal negligent supervision, retention, and

training claims should be dismissed; and (3) any state-law claims for negligent retention

and supervision are barred by sovereign immunity.  (Doc. 33-4 at 6-19).  In response,

the Plaintiffs only argue that their *Monell* claim should survive the motion for summary

judgment because of Fox's alleged testimony that he was trained to handcuff and then investigate.

### 1. *Monell* liability

The Plaintiffs contend that "*Monell* liability attaches to Macon-Bibb County" for Fox's (1) unlawful entry into the Martin's home and his (2) unlawful seizure of E. Martin.[2] (Doc. 36 at 12-16).  "[T]he mere fact that a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to infer municipal culpability and causation."  *Martin v. Wood*, __F. App'x__, 2016 WL 1612834, at *2 (11th Cir. 2016) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  "The Supreme Court has placed strict limitations on municipal liability under § 1983."  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  Its liability "may not be based on the doctrine of respondeat superior."  *Id.*  Instead, only when the county's "official policy" causes a constitutional violation may a county be held responsible.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The Plaintiffs can establish a policy of Macon-Bibb County by showing "either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  *Grech*, 335 F.3d at 1329; *see also Monell*, 436 U.S. at 690-91.  Further, a municipality can be held liable where a "policy or custom" of inadequate training or supervision "evidences a 'deliberate indifference' to the rights of its inhabitants."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citation omitted).

---

[2] Although the Plaintiffs devoted a significant portion of their response brief to the unconstitutionality of Fox's conduct, Fox has not moved for summary judgment.  For purposes of Macon-Bibb County's motion, the Court assumes the Plaintiffs have provided sufficient evidence for a reasonable jury to conclude that Fox violated their constitutional rights.

As to Fox's warrantless entry of the Martin's home, the Plaintiffs adduce no evidence and make no argument that an officially promulgated county policy, custom or practice, or inadequate training or supervision was the moving force behind Fox's alleged constitutional violation.  Accordingly, Macon-Bibb County is entitled to summary judgment on the § 1983 claim premised on this conduct.

As to Fox's seizing E. Martin, the Plaintiffs alleged in their complaint that Fox unlawfully seized E. Martin by handcuffing and arresting him without probable cause and that the "failure of the Macon Police Department to properly train, supervise and retain its police officers constitute customs and practices which were a moving force in the violation of [E. Martin's] constitutional rights."  (Doc. 1 ¶¶ 58-59, 64).  The Plaintiffs rely on a single question and answer in Fox's deposition to support their claim that Macon-Bibb County is somehow responsible for Fox's seizure of E. Martin.  (Doc. 36 at 17-18).  On recross examination, counsel for the Plaintiffs asked Fox whether it was his "testimony that that training taught you to place people in handcuffs while you conducted an investigation?"  (Doc. 31-4 at 53:24-54:1).  Fox responded, "Yes."  (*Id.* at 54:2).  This question followed a lengthier examination on Fox's training during counsel's initial cross examination.  There, counsel asked Fox whether "when you do an investigation, you just put handcuffs on people while you're doing an investigation?"  (*Id.* at 37:25-38:1).  Fox responded, "Sometimes, yes."  (*Id.* at 38:2).  He elaborated that such times would be when the safety of the officer required handcuffs.  (*Id.* at 38:4-7).  Thus, it is clear that Fox did not testify that he was trained to *always* handcuff during an investigation.  Rather, he was taught that there were times when handcuffing was appropriate, such as when there was a need for officer safety.

Additionally, the Plaintiffs cite the deposition testimony of Internal Affairs Investigator Marquette King who said, apparently speaking from recollection, that she "believe[d] [Fox] mentioned something to the effect that he was trained that way, that he put people in handcuffs first, then investigate[d] the scene … ."  (Doc. 34-3 at 17:1-10, 36:13-20).  King's recollection was faulty.  In his internal affairs recorded statement, Fox actually said that he would first investigate before handcuffing to make sure that he had probable cause.  (Doc. 31-4 at 74).  He elaborated that he would "investigate it first and the[n] place handcuffs, or if someone see him doing it then you place handcuffs and then do the investigation."  *Id.*  Clearly, Fox never testified that he always handcuffed and then investigated.  Consequently, there is no evidence that Macon-Bibb County trained its officers to handcuff and then investigate.

Even if Fox had testified that he was trained to always handcuff and then investigate, this testimony alone would not establish Macon-Bibb County's liability under *Monell*.  First, the Plaintiffs do not argue that this evidence establishes that Fox acted pursuant to an officially promulgated county policy.  Nor could they.  The Plaintiffs have pointed to no officially adopted and promulgated "policy statement, ordinance, regulation, or decision."  *Monell*, 436 U.S. at 690; *see also Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 998 (11th Cir. 1990).  The Plaintiffs do argue, however, that Fox's testimony establishes a custom or practice.  But it is well-established that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality."  *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted).  The Plaintiffs provide no evidence of any incidents other than their own with Fox.

Finally, the Plaintiffs argue that Fox's testimony evidences Macon-Bibb County's failure to train or supervise.  But this theory requires that Macon-Bibb County was put on notice of a deficiency in training or supervision from a pattern of constitutional violations from untrained officers or "because the need to train and supervise in the particular areas in issue was so obvious and the likelihood of constitutional violations was highly predictable."  *Gold*, 151 F.3d at 1351-52; *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328-29 (11th Cir. 2015).  The Plaintiffs have failed to establish a pattern because, again, they only rely on their own incident with Fox. They have also failed to show that the need for training and supervision was "so obvious."  At best, the Plaintiffs have provided evidence, and very little at that, that Fox was "unsatisfactorily trained."[3]  *See Canton v. Harris*, 489 U.S. 378, 390 (1989). However, the deficient training of a particular officer is insufficient to hold the municipality liable because the focus of the inquiry is "on [the] adequacy of the training program in relation to the tasks the particular officers must perform."  *Id.*; *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

Accordingly, because the Plaintiffs have failed to provide sufficient evidence that a Macon-Bibb County policy was the moving force behind the alleged constitutional violations, Macon-Bibb County is entitled to summary judgment on the Plaintiff's § 1983 claims.

---

[3] The Court notes that the Plaintiffs state in the facts section of their brief that Fox had fourteen complaints against him, including one where he "pull[ed] a gun on an unarmed thirteen year-old teenager." (Doc. 36 at 8).  The Plaintiffs do not rely on this evidence in their argument.  In any event, the evidence shows a lieutenant who investigated the incident determined Fox acted appropriately under the circumstances, and Internal Affairs took no action against him.  (Doc. 34-4 at 27:2-29:11, 149).  *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding the plaintiff, who attempted to show the city defendant knew of an officer's violent nature, was "obligated to produce some evidence that the complaints against [the officer] had some merit").  While seven complaints against Fox did result in disciplinary action, the Plaintiff has not demonstrated that any of them pertain to a deficiency in training closely related to the Plaintiffs' alleged injuries here.  *See Canton*, 489 U.S. at 391.

### 2. Federal claims for negligent training, retention, and supervision

The Plaintiffs make no argument in response to Macon-Bibb County's motion for summary judgment that the county is liable for any federal claim for negligent training, retention, and supervision. The complaint alleges the Plaintiffs' constitutional rights were violated by Macon-Bibb County's negligent training, retention, and supervision, but their response does not make clear whether they are asserting these as federal claims. (Doc. 1 ¶¶ 66, 74, 85). Assuming the Plaintiffs have asserted these as federal claims, negligence is insufficient to establish the violation of a constitutional right. *See Canton*, 489 U.S. at 388. As discussed, *deliberate indifference* is required to hold a municipality liable, *see id.*, and the Plaintiffs have failed to create a genuine issue of fact with regard to whether Macon-Bibb County was deliberately indifferent. Accordingly, Macon-Bibb County is entitled to judgment as a matter of law as to any federal claim for negligent training, retention, and supervision.

### 3. State-law claims for negligent supervision and retention

It also appears from the complaint that the Plaintiffs are asserting state-law claims for negligent supervision and retention. (Doc. 1 ¶¶ 75, 82). Macon-Bibb County contends it is entitled to sovereign immunity on these claims because the Plaintiffs have failed to demonstrate it waived its sovereign immunity. In Georgia, sovereign immunity extends "to the state and all of its departments and agencies, including sheriffs and counties." *Richardson v. Quitman Cty., Ga.*, 912 F. Supp. 2d 1354, 1368 (M.D. Ga. 2012). "Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to

benefit from the waiver." *Forsyth Cty. v. Greer*, 211 Ga. App. 444, 439 S.E.2d 679, 681 (1993) (quotation marks omitted) (alteration in original).  Thus, unless the Plaintiffs establish that sovereign immunity has been waived, sovereign immunity bars these claims against Macon-Bibb County.  *See Seay v. Cleveland*, 270 Ga. 64, 65, 508 S.E.2d 159, 161 (1998).

"In Georgia, sovereign immunity may be waived only if a statute expressly provides that sovereign immunity is waived and the extent of such waiver."  *Grech*, 335 F.3d at 1341 (citations omitted).  A municipality may waive its immunity by purchasing liability insurance, but only if "the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."  O.G.C.A. § 36-33-1(a); *see also Kitchen v. CSX Transp., Inc.*, 6 F.3d 727, 731 (11th Cir. 1993) ("[W]hen the plain terms of the county's insurance policy provide that there is no coverage for a particular claim, the policy does not create a waiver of sovereign immunity as to that claim.").

Here, the Plaintiffs have wholly failed to address whether sovereign immunity bars these claims or produce evidence demonstrating Macon-Bibb County has waived its sovereign immunity.  (Docs. 33-3 ¶ 19; 36-1 ¶ 19).  Accordingly, Macon-Bibb County is entitled to summary judgment on these claims.[4]

---

[4] It is unclear whether the Plaintiffs have also asserted a state-law claim for negligent training.  If they have, it is also barred by sovereign immunity for the same reasons the negligent supervision and retention claims are barred.  Further, to the extent the Plaintiffs seek to impose liability on Macon-Bibb County based on the state-law claims against Fox in his official capacity, the claims are also barred by sovereign immunity.  *See Tattnall Cty. v. Armstrong*, 333 Ga. App. 46, 49, 775 S.E.2d 573, 575-76 (2015), *overruled on other grounds by Rivera v. Washington*, __S.E.2d__, 2016 WL 1190390 (Ga. 2016); *see also Cameron v. Long*, 274 Ga. 122, 126, 549 S.E.2d 341, 346 (2001).

### III.     CONCLUSION

For the foregoing reasons, Overlook and Woodruff's motion for summary

judgment and Macon-Bibb County's motion for summary judgment are **GRANTED**.

**SO ORDERED**, this 10th day of May, 2016.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT